ESTATE OF ORECNY, Appellant,

v.

FORD MOTOR COMPANY et al., Appellees.

[Cite as *Estate of Orecny v. Ford Motor Co.* (1996), 109 Ohio App.3d 462.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 69083.

Decided Feb. 20, 1996.

---

Robert E. Sweeney Co., L.P.A., and John L. Goodman, for appellant.

Timothy J. Krantz, for appellee Ford Motor Company.

Betty D. Montgomery, Attorney General, and Doug Musick, Assistant Attorney General, for appellee Industrial Commission of Ohio.

JAMES M. PORTER, Judge.

Plaintiff-appellant, Mary Orecny (now the Estate of Mary Orecny, deceased), appeals from the trial court's granting of the employer Ford Motor Company's Civ.R. 60(B) motion for relief from judgment. The court vacated a settlement for

workers' compensation death benefits arising from her husband's death on the grounds that the claim abated upon her death. We find merit to the appeal and reverse for the reasons hereinafter stated.

On December 12, 1991, John Orecny died as a result of mesothelioma due to his occupational exposure to asbestos. His widow, Mary Orecny, filed a workers' compensation claim for death benefits against defendant-appellee Ford Motor Company, a self-insurer.

The plaintiff, as the dependent surviving spouse, was awarded death benefits consistent with R.C. 4123.59 by the hearing officer on September 10, 1993, which award was affirmed by the regional board of review and the Industrial Commission. Ford appealed the decision to the common pleas court on July 28, 1994, pursuant to R.C. 4123.512.

On February 1, 1995, a pretrial was held wherein the parties informed the court that a lump-sum settlement had been reached for $37,000. The parties, through counsel, stipulated that "this matter is settled and dismissed with prejudice at defendant-appellant Ford Motor Company's costs; subject to approval of the Industrial Commission." This entry was endorsed with the words "It is so ordered" by the trial court.

On February 7, 1995, plaintiff's counsel sent a signed copy of the settlement agreement to Ford's counsel. On February 9, 1995, Ford's counsel executed the settlement agreement and forwarded it to the Cleveland Office of the Attorney General.

On February 19, 1995, the plaintiff died of cardiac arrest. Without knowledge of her death, on February 23, 1995, the Attorney General's Office sent the joint application for approval of the settlement to Columbus. On February 27, 1995, plaintiff's counsel notified Ford of the plaintiff's February 19 death.

On March 10, the Industrial Commission sent notice that the settlement had abated due to the death of plaintiff. On March 16, 1995, Ford moved to vacate the trial court's judgment under Civ.R. 60(B). On May 17, 1995, the trial court granted Ford's motion to vacate the settlement and found that "the claim of the widow-claimant has abated." From this ruling plaintiff's estate prosecuted a timely appeal.

Plaintiff's sole assignment of error states as follows:

"The trial court erred in granting defendant Ford Motor Company's motion to vacate and/or relief from judgment because when a workers' compensation case is appealed to the court of common pleas and settled at the court level, the settlement is final and binding upon the parties; and the death of the widow-claimant does not abate or extinguish the finality of the court settlement."

R.C. 4123.65 (as amended October 20, 1993) permits a claimant and a self-insured employer such as Ford to settle a workers' compensation claim. The statute, which was a substantial revision of its predecessor, draws a significant distinction between settlements achieved by State Fund employers and those achieved by self-insurers like Ford (as emphasized below):

"(A) A state fund employer or the employee of such an employer may file an application with the administrator of workers' compensation for approval of a final settlement of a claim under this chapter. The application shall include the settlement agreement, be signed by the claimant and employer, and clearly set forth the circumstances by reason of which the proposed settlement is deemed desirable and that the parties agree to the terms of the settlement agreement * * *. *Every self-insuring employer that enters into a final settlement agreement with an employee shall mail, within seven days of executing the agreement, a copy of the agreement to the administrator and the employee's representative. The administrator shall place the agreement into the claimant's file.*

"(B) Except as provided in divisions (C) and (D) of this section, *a settlement agreed to under this section is binding upon all parties thereto and as to items, injuries, and occupational diseases to which the settlement applies.*

"(C) *No settlement* agreed to under division (A) of this section or *agreed to by a self-insuring employer and his employee shall take effect until thirty days* after the administrator approves the settlement for state fund employees and employers, or *after the self-insuring employer and employee sign the final settlement agreement. During the thirty-day period,* the employer, employee, or administrator, for state fund settlements, and *the employer or employee, for self-insuring settlements, may withdraw his consent to the settlement by an employer providing written notice to his employee and the administrator or by an employee providing written notice to his employer and the administrator,* or by the administrator providing written notice to the state fund employer and employee.

"(D) *At the time of agreement to any final settlement agreement* under division (A) of this section or agreement *between a self-insuring employer and his employee,* the administrator, for state fund settlements, and *the self-insuring employer, for self-insuring settlements, immediately shall send a copy of the agreement to the industrial commission who shall assign the matter to a staff hearing officer.* The staff hearing officer shall determine, within the time limitations specified in division (C) of this section [30 days], whether the settlement agreement is or is not a gross miscarriage of justice. If the staff hearing officer determines within that time period that the settlement agreement is clearly unfair, the settlement agreement is deemed not approved. *If the staff hearing officer determines that the settlement agreement is not clearly unfair* or

fails to act within those time limits, *the settlement agreement is approved.*" (Emphasis added.)

We note at the outset that the parties have not cited any case, nor has independent research revealed any case, which squarely applies R.C. 4123.65, *as amended* on October 20, 1993 to the facts presented herein. The cases which the parties cite were all decided under the prior version of R.C. 4123.65,[1] effective October 1, 1953: *Finnerty v. Yellow Freight Sys.* (1988), 47 Ohio App.3d 186, 548 N.E.2d 949; *Milnes v. Trimble* (Jan. 10, 1994), Stark App. No. CA 9397, unreported, 1994 WL 22891; *Halley v. Ohio Bur. of Workers' Comp.* (1995), 102 Ohio App.3d 391, 657 N.E.2d 340. We do not find these cases dispositive.

Under the prior statute, "[b]efore any final settlement agreement is approved by the industrial commission, application therefor shall be made to the commission" *and* submitted by the claimant. In the prior statute, no distinction was made between a settlement achieved by a State Fund employer as compared with a self-insuring employer.

As noted above, under the newly amended statute applicable to the facts of this case, significant distinctions are made between the role of a State Fund employer and a self-insuring employer in settlement approvals.

■ When the General Assembly enacted Am.Sub. H.B. No. 107, it significantly changed the provisions of prior R.C. 4123.65. Before the amendments, the settlement agreement had to clearly set out why the proposed settlement was desirable and a hearing had to be held by the members of the Industrial Commission to approve it. The amended version gives much more latitude to self-insured employers to negotiate settlements with their employees. No application for approval by a claimant is required. The self-insuring employer merely mails the settlement agreement to the administrator. The new thirty-day waiting period is essentially a cooling-off period to allow the employer or the employee to withdraw from the self-insuring settlement agreement. The administrator can only disapprove if, within thirty days, he finds that "a gross miscarriage of justice" has occurred or that the settlement is "clearly unfair." A final settlement agreement is "binding on all parties thereto" unless the administrator

---

1. Prior to amendment, R.C. 4123.65 stated as follows:

"Before any final settlement agreement is approved by the industrial commission, application therefor shall be made to the commission. Such application shall be signed by the claimant and shall clearly set forth the circumstances by reason of which the proposed settlement is deemed desirable and the nature of the controversy. Notice of the hearing of such application shall be given to the employee and his representative and the employer and his representative. Such application shall be heard by the members of the industrial commission or a majority thereof sitting en banc. No member may delegate his authority to hear and determine the matters raised by such application."

makes the required finding of unfairness. The legislature intended by the amendments to promote the use of settlement agreements and to give self-funded employers greater flexibility in negotiating them.

■ A plain reading of the statute reveals that the settlement agreement reached herein should not abate upon the death of the widow. The agreement was signed by both parties and forwarded to the Industrial Commission. The parties did not withdraw consent during the thirty-day period. The Industrial Commission did not disapprove the settlement within thirty days on the grounds that it was "clearly unfair" or a "gross miscarriage of justice." Instead, it issued an order on March 9, 1995 stating that the claim had abated due to the death of the widow/claimant. In doing so, the Industrial Commission cited Ohio Adm. Code 4123–5–21(A), which states:

"When a claimant dies, action on any application filed by the claimant, and pending before the bureau or the Industrial Commission at the time of his death, is abated by the claimant's death."

For several reasons we do not find this administrative regulation applicable to the amended statute or the facts of the instant case.

■ In the first place, the plaintiff was no longer a "claimant"; her claim had been settled with the self-insuring employer; the claim was merged in the final settlement agreement. "Such settlement extinguishes or merges the original rights or claims and correlative obligations and, where the agreement is executory, substitutes for the original claim the new rights and obligations agreed to." *Columbiana Cty. Bd. of Commrs. v. Samuelson* (1986), 24 Ohio St.3d 62, 63, 24 OBR 142, 143, 493 N.E.2d 245, 247.

No "application filed by the claimant" to the Industrial Commission for approval was necessary under the new statute, nor was one "pending." The self-insuring employer was required to mail a copy of the settlement agreement to the administrator, who shall place it in the claimant's file. The fact that the parties used an obsolete form ("Joint Application for Approval of Settlement"), more suited to procedures under prior R.C. 4123.65, to convey their settlement agreement does not take precedence over the express language of the amended statute. In short, no "application" was pending before the Industrial Commission "by the claimant" at the time of the plaintiff's death. This is consistent with our obligation to give the workers' compensation laws a liberal construction "in favor of employees and the dependents of deceased employees" (R.C. 4123.95). Accordingly, we find that Ohio Adm.Code 4123–5–21(A) does not apply to the facts of this case.

We are also guided in our conclusions by this court's prior decisions which hold that, where the Industrial Commission has allowed the benefits in question or the

claimant prevails on appeal before she dies, there is no abatement. This subject was discussed in *Wallace v. Connor* (June 6, 1985), Cuyahoga App. No. 49187, unreported, at 2–3, 1985 WL 6837:

"However, the statute makes no provision for the claimant's dependents to recover benefits which the industrial commission denied, by showing that the commission was wrong. For that reason, Ohio courts have ruled that the claimant's appeal from an adverse ruling by the industrial commission abates on the claimant's death. *Bozzelli v. Industrial Comm.* (1930), 122 Ohio St. 201 [171 N.E. 108], paragraph three of the syllabus; *Ratliff v. Flowers* (1970), 25 Ohio App.2d 113 [54 O.O.2d 213, 266 N.E.2d 848]. By administrative regulation pursuant to statutory authority, the industrial commission directs that claims pending before the commission or the workers' compensation bureau abate on the claimant's death. Ohio Adm.Code, Sec. 4123–5–21.

"The claim does not later abate if the industrial commission allows it (R.C. 4123.60), or the claimant's appeal prevails in the trial court before he dies. *State ex rel. Gaddis v. Indus. Comm.* (1938), 133 Ohio St. 553 [11 O.O. 266, 15 N.E.2d 146], paragraph three of the syllabus. Additionally, the employer can pursue an appeal from a commission order which allows benefits, even after the claimant dies. *Youghiogheny & Ohio Coal Co. v. Mayfield, supra* [ (1984), 11 Ohio St.3d 70, 11 OBR 315, 464 N.E.2d 133], syllabus."

Our holding in *Wallace* was followed in *Kozak v. Homelinks Golf Club, Inc.* (Feb. 4, 1993), Cuyahoga App. No. 61662, unreported, at 4, 1993 WL 27661 ("The claim does not abate, however, if the Industrial Commission allows it, or the claimant's appeal prevails in the trial court before he dies.").

In the instant case, both conditions of the *Wallace/Kozak* cases were met: plaintiff's claim for death benefits was allowed by the Industrial Commission and plaintiff prevailed on appeal to the trial court by achieving a successful final settlement, which dismissed the case with prejudice and was binding on the parties.

Furthermore, the Ohio Supreme Court has long held that "administrators of deceased dependents could recover the unpaid compensation to which the dependents were entitled while living." *Ballard v. Ohio Edison Co.* (1938), 134 Ohio St. 104, 107, 11 O.O. 541, 543, 16 N.E.2d 203, 204. See, also, *State ex. rel. Hoper v. Indus. Comm.* (1934), 128 Ohio St. 105, 190 N.E. 222, syllabus; *State ex. rel. Crawford v. Indus. Comm.* (1924), 110 Ohio St. 271, 143 N.E. 574, syllabus; *Pardiew v. Keller* (1969), 19 Ohio App.2d 207, 210, 48 O.O.2d 340, 342, 250 N.E.2d 765, 767. Since the settlement agreement for a lump sum amount accrued before the plaintiff died, her estate is entitled to the amount of the settlement. In *State ex. rel. Crawford,* the widow-claimant's estate was not able to recover the unpaid biweekly amounts the widow was due after her death; however, the court noted

that payments are sometimes made in lump sum amounts and that since payments cannot be recovered, the commission should be cautious in ordering lump sum payments as such payments are not recoverable upon the death of the claimant. *Id.,* 110 Ohio St. at 285, 143 N.E. at 578.

Furthermore, the Industrial Commission's abatement regulation only addresses applications "pending before the bureau or the Industrial Commission" at the hearing level. It does not, by its terms, apply to matters which are before a trial court for a trial *de novo* or on appeal.

In the present case, there is no indication that either of the parties intended to withdraw from the settlement. They all believed that it was final as evidenced by the dismissal with prejudice. Moreover, the Industrial Commission had thirty days within which to object to the settlement on the grounds that it was "clearly unfair" under R.C. 4123.65(D). The commission did not do so. Rather, it issued an order on March 9, 1995 stating that the claim had abated pursuant to Ohio Adm.Code 4123–5–21(A). However, we find that the administrative regulation is not applicable to a claim appealed to the trial court, settled and dismissed with prejudice. This interpretation was followed in *Milnes v. Trimble* (Jan. 10, 1994), Stark App. No. CA 9387, unreported, 1994 WL 22891.

The principal authority on which Ford relies is *Finnerty v. Yellow Freight Sys., supra,* 47 Ohio App.3d 186, 548 N.E.2d 949. The claimant in *Finnerty* died before the commission had ruled on the application for approval of the settlement agreement. However, the settlement agreement was proposed while the matter was pending at the hearing level before the commission not at the trial court level. The court in *Finnerty* held that the claim had in fact abated under Ohio Adm.Code 4123–5–21(A). *Finnerty* is clearly distinguishable from the present case because the claim herein was not "pending" before the commission when the settlement was achieved, but was pending before the trial court.

*Halley v. Ohio Bur. of Workers' Comp.* (1995), 102 Ohio App.3d 391, 657 N.E.2d 340, relied upon by the plaintiff, is also distinguishable. In *Halley,* the employer was state funded and not self-insured. Therefore, when a settlement agreement was entered into, the employee and employer not only signed the agreement, but the Chief of the Workers' Compensation Section of the Attorney General's Office, with the approval of the hearing officer for the commission, also signed the agreement. The court in *Halley* held that, since the agreement was signed with the approval of the hearing officer, the matter was no longer pending before the commission.

Finally, it is extremely doubtful that Civ.R. 60(B) is even available for relief in the present circumstances. *Boster v. C & M Serv., Inc.* (1994), 93 Ohio App.3d 523, 525, 639 N.E.2d 136, 138:

" 'It is highly questionable that Civ.R. 60(B) can be used to obtain relief from a judgment based upon a settlement agreement entered into by the parties to the action. The settlement agreement terminates the rights that parties may have and the judgment entry of the trial court ordinarily only clears up the court records.' " *Id.*, quoting from *Bond v. BancOhio Natl. Bank* (Aug. 27, 1992), Franklin App. No. 92 AP–536, unreported, 1992 WL 214351.

For the reasons hereinbefore stated, we hold that the settlement did not abate upon the widow's death. Appellant's sole assignment of error is sustained.

The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

*Judgment accordingly.*

JAMES D. SWEENEY, P.J., and NAHRA, J., concur.