[This decision has been published in *Ohio Official Reports* at 92 Ohio St.3d 463.]

THE STATE EX REL. JOHNSTON, APPELLANT, *v.* OHIO BUREAU OF WORKERS'
COMPENSATION ET AL., APPELLEES.

[Cite as *State ex rel. Johnston v. Ohio Bur. of Workers' Comp.*,
2001-Ohio-1284.]

*Workers' compensation—Ohio Adm.Code 4123-5-21(A) is generally applicable
to joint applications for approval of a State Fund settlement filed pursuant
to R.C. 4123.65, provided claimant's death occurs before settlement is
approved by the Administrator of Workers' Compensation—Ohio
Adm.Code 4123-5-21(A) is nullified by failure to process application
within reasonable time.*

(No. 99-2122—Submitted April 24, 2001—Decided August 15, 2001.)

APPEAL from the Court of Appeals for Franklin County, No. 98AP-1236.

————————

SYLLABUS OF THE COURT

1.  Ohio Adm.Code 4123-5-21(A), which provides that the death of a claimant
    abates action on any administratively pending application filed by the
    claimant, is generally applicable to joint applications for approval of a State
    Fund settlement filed pursuant to R.C. 4123.65, provided that the claimant's
    death occurs before the settlement is approved by the Administrator of
    Workers' Compensation.

2.  Ohio Adm.Code 4123-5-21(A) is nullified in those circumstances where the
    Administrator of Workers' Compensation fails to process an application for
    approval of a State Fund settlement pursuant to R.C. 4123.65 within a
    reasonable period of time.

————————

**ALICE ROBIE RESNICK, J.**

{¶ 1} On April 30, 1992, James Johnston, now deceased, received an injury in the course of, and arising out of, his employment with Trans-Fleet Enterprises, Inc., a State Fund employer. His workers' compensation claim was allowed for "sprain lumbar; lumbar disc displacement with myelopathy at L3-4 left & L5-S1 right." James received temporary total disability compensation from May 16, 1992 to November 29, 1994, and began receiving wage-loss compensation on September 7, 1996, at an average rate of approximately $395 per week.

{¶ 2} On May 21, 1997, an "Application for Approval of Settlement Agreement," signed by James and his employer, was filed with the Ohio Bureau of Workers' Compensation ("bureau"), requesting that the bureau approve a final settlement of the entire claim in the lump-sum amount of $90,000. On January 18, 1998, while the application for settlement was still pending, James died of a myocardial infarction unrelated to his employment.

{¶ 3} On January 21, 1998, James's daughter, Pam Falkner, notified the bureau of her father's death. Two days later, on January 23, 1998, the bureau notified James's counsel that it would approve a settlement in the amount of $50,000. In deciding on this amount, the bureau considered the value of prospective wage-loss benefits, an eventual permanent partial disability award, and the potential for permanent total disability compensation. On January 26, 1998, James's counsel, acting on the instructions of James's widow, appellant Judy Johnston, accepted the approved amount.

{¶ 4} On January 27, 1998, the bureau notified James's counsel as follows:

"The application is denied—All parties do not agree with the settlement terms.

"Settlement application is abated by [injured worker's] death on 1-18-98."

{¶ 5} On March 19, 1998, appellant filed a "First Report of an Injury, Occupational Disease or Death," requesting, "pursuant to R.C. 4123.60 * * *[,]

payment of the settlement award that had been offered on January 23, 1998." By an order mailed July 11, 1998, a Staff Hearing Officer determined that the settlement "application was abated by claimant's death" and denied appellant's request.

{¶ 6} On September 28, 1998, appellant filed a complaint in mandamus in the Court of Appeals for Franklin County seeking a writ directing appellees, James Conrad, Administrator of the bureau, and the Industrial Commission of Ohio ("commission"), to find that the settlement application was not abated by the death of James Johnston and to order that the claim be settled for the approved amount of $50,000. The court of appeals denied the writ, finding that "at the time of the decedent's death, which preceded any form of approval by the BWC, any and all action relating to claimant's settlement application abated under Ohio Adm.Code 4123-5-21(A)."

{¶ 7} In reaching its conclusion, the court of appeals was compelled to write:

"We additionally note that the present case does raise serious concerns regarding the advantage that accrues to the BWC [Bureau of Workers' Compensation] through sluggish processing of settlement applications, since sufficient delay could well lead to a significant number of claims abating due to the death of the claimant, with a corresponding decrease in settlement expenditures to the workers' compensation system. * * * Such a delay, in the present case, appears to have worked exactly the type of inequitable result contemplated in [*State ex rel. Nossal v. Terex Div. of I.B.H.* (1999), 86 Ohio St.3d 175, 712 N.E.2d 747]. Nonetheless, we find that no other statutory basis exists upon which to impose a time constraint upon the BWC for the processing of settlement applications [and that] we are without authority to amend any pertinent statute or administrative regulation in order to address what is an unequitable result."

**{¶ 8}** Judge Tyack, dissenting, opined that "we need to engraft an exception onto the legal provisions which call for abatement of a workers' compensation claim. The exception I propose would nullify the abatement requirement in those circumstances where the BWC and/or the Industrial Commission fail to process an agreed application for settlement within a reasonable time frame. Our failure to engraft the exception here rewards the BWC for being inept at best and punishes the innocent family of a person who was seriously injured on the job."

**{¶ 9}** The cause is now before this court pursuant to an appeal as of right.

**{¶ 10}** The question presented for our determination is whether appellees abused their discretion in finding that the settlement application filed on May 21, 1997, was abated by the death of James Johnston on January 18, 1998. Specifically, we are asked to decide (1) whether Ohio Adm.Code 4123-5-21(A) applies to joint applications for approval of a State Fund settlement filed pursuant to R.C. 4123.65 and (2) whether the bureau's eight-month delay in processing decedent's settlement application warrants a dispensation of the rule that a claim abates if the injured employee dies before a formal administrative award is made.

Applicability of Ohio Adm.Code 4123-5-21(A) to Claims for Settlement

**{¶ 11}** Appellant's first argument is that the abatement rule set forth in Ohio Adm.Code 4123-5-21(A) is limited to applications "filed by the claimant," and thus by definition "cannot apply to joint matters pending before either the Bureau or the Commission at the time of a claimant's death." Appellant contends that ever since the enactment of Am.Sub.H.B. No. 107, effective October 20, 1993 (145 Ohio Laws, Part II, 2990, 3173), R.C. 4123.65 has required employers and employees to file joint applications for settlement with the bureau, and that since the procedure for settling workers' compensation claims is governed solely by statute, abatement is inapplicable to settlement applications filed after October 20, 1993. In addition, appellant relies on Commission Policy Memo No. 0.7 and *Estate of Orecny v. Ford*

4

*Motor Co.* (1996), 109 Ohio App.3d 462, 467, 672 N.E.2d 679, 682, for the proposition that the abatement regulation does not apply to the amended statute.

{¶ 12} While these arguments present some initial interpretive appeal, our review of the legal history concerning the settlement and abatement of workers' compensation claims leads us to reject appellant's assessment of the current interplay between R.C. 4123.65 and Ohio Adm.Code 4123-5-21(A).

{¶ 13} Agreements for final settlement of a workers' compensation claim were recognized as valid and enforceable even before express statutory authority therefor was provided in the Workers' Compensation Act. "The right to settle a claim * * * after it has accrued is incidental to and necessarily included in the right of the claimant to assert his claim * * *. Especially have such settlements been regarded as valid when approved by the Industrial Commission." *State ex rel. Weinberger v. Indus. Comm.* (1941), 139 Ohio St. 92, 96-97, 22 O.O. 59, 61, 38 N.E.2d 399, 401-402.

{¶ 14} Likewise, the rule that unaccrued workers' compensation payments abate upon the death of the claimant predates any regulatory provision to this effect and reflects the basic principle that, unlike tort recovery, the right to receive future workers' compensation benefits is not inheritable. Thus, in *Ballard v. Ohio Edison Co.* (1938), 134 Ohio St. 104, 11 O.O. 541, 16 N.E.2d 203, at the syllabus, we held:

"When the dependent of a deceased employee enters into a contract of settlement under the supervision and approval of the Industrial Commission of Ohio, the administrator of the dependent is not entitled to recover from a self-insuring employer any installment of compensation that is unaccrued at the time of the dependent's death."

{¶ 15} The General Assembly amended the Act in 1951 to provide expressly for the final settlement of a workers' compensation claim. 124 Ohio Laws 806, 823. That provision became R.C. 4123.65 when the Ohio Revised Code

was enacted, effective October 1, 1953. Former R.C. 4123.65, as effective October 1, 1953, provided:

"Before any final settlement agreement is approved by the industrial commission, application therefor shall be made to the commission. *Such application shall be signed by the claimant* and shall clearly set forth the circumstances by reason of which the proposed settlement is deemed desirable and the nature of the controversy. Notice of the hearing of such application shall be given to the employee and his representative and the employer and his representative. Such application shall be heard by the members of the industrial commission or a majority thereof sitting en banc. No member may delegate his authority to hear and determine the matters raised by such application." (Emphasis added.)

{¶ 16} The bureau promulgated Ohio Adm.Code 4123-5-21 in 1978, which provides:

"(A) When a claimant dies, action on any application *filed by the claimant*, and pending before the bureau or the industrial commission at the time of his death, is abated by claimant's death." (Emphasis added.)

{¶ 17} In cases involving the application of Ohio Adm.Code 4123-5-21(A) to lump-sum settlements under former R.C. 4123.65, the entire lump sum was considered to accrue on the date the commission approved the settlement agreement. The injured worker's right to receive the entire lump-sum amount was held to be inheritable on this date, but not before. Thus, Ohio Adm.Code 4123-5-21(A) was held applicable to abate even a joint application filed under former R.C. 4123.65 where the claimant died prior to a ruling on the application by the commission, but held inapplicable where death occurred after the settlement agreement was approved by someone authorized to act on the commission's behalf. See *Finnerty v. Yellow Freight Systems, Inc.* (1988), 47 Ohio App.3d 186, 548

N.E.2d 949; *Halley v. Ohio Bur. of Workers' Comp.* (1995), 102 Ohio App.3d 391, 657 N.E.2d 340.

{¶ 18} It appears, however, that the commission's involvement in the primary aspects of the settlement process proved counterproductive, resulting in too many settlements being rejected against the wishes of the parties directly involved. In turn, the difficulty in closing files added to the complexity of managing the workers' compensation system and forced a continued growth in the bureau's reserves. Thus, the General Assembly enacted Am.Sub.H.B. No. 107, effective October 20, 1993, in part to facilitate the settlement of workers' compensation claims. See, generally, Fulton, Ohio Workers' Compensation Law (2 Ed.1998) 313-314, Section 10.4.

{¶ 19} With the enactment of Am.Sub.H.B. No. 107, the General Assembly made significant changes in former R.C. 4123.65. Among other things, Am.Sub.H.B. No. 107 transferred the primary authority to oversee settlements from the commission to the Administrator of Workers' Compensation and substantially revised the procedure for filing and processing settlement applications. The statute no longer requires the filing of an application for approval of settlement in self-insured claims.[1] Instead, the self-insurer must mail a copy of the settlement agreement to the Administrator, who then sends it to the commission for assignment to a staff hearing officer. R.C. 4123.65(A) and (D). The staff hearing officer may disapprove the settlement agreement only upon finding it to be "a gross miscarriage of justice" or "clearly unfair." R.C. 4123.65(D). A self-insuring settlement takes effect "thirty days * * * after the self-insuring employer and employee sign the final settlement agreement." R.C. 4123.65(C).

{¶ 20} On the other hand, R.C. 4123.65(A) provides:

---

1. Nonsubstantive changes were made to R.C. 4123.65 in 1996. See 145 Ohio Laws, Part III, 4646, 4656.

"A state fund employer or the employee of such an employer may file an application with the administrator of workers' compensation for approval of a final settlement of a claim under this chapter. The application shall include the settlement agreement, *be signed by the claimant and employer, and clearly set forth* the circumstances by reason of which the proposed settlement is deemed desirable and *that the parties agree to the terms of the settlement agreement* provided that the agreement need not be signed by the employer if the employer is no longer doing business in Ohio. * * * " (Emphasis added.)

{¶ 21} A State Fund settlement does not "take effect until thirty days after the administrator approves the settlement." R.C. 4123.65(C).

{¶ 22} In *Estate of Orecny,* 109 Ohio App.3d 462, 672 N.E.2d 679, the Court of Appeals for Cuyahoga County considered the applicability of Ohio Adm.Code 4123-5-21(A) to an application for lump-sum settlement filed under the amended statute. In that case, John Orecny died of an occupational disease contracted in the course of his employment with Ford Motor Company, a self-insured employer. His surviving spouse and claimant, Mary Orecny, brought a claim for death benefits pursuant to R.C. 4123.59, which was allowed by the commission. Ford appealed the allowance to the court of common pleas and, while that appeal was pending, the parties reached a settlement for the lump-sum amount of $37,000. The cause was then dismissed subject to the commission's approval of the settlement. However, after the parties executed a settlement agreement, but before the matter was referred to the commission, the claimant (the widow) died of cardiac arrest. Unaware of claimant's death, the Attorney General sent a joint application for approval of the settlement to the commission, which then sent notice that the settlement abated due to the death of claimant.

{¶ 23} Ford then successfully had the trial court's order vacated pursuant to Civ.R. 60(B), and the widow's estate appealed. The court of appeals reversed and found that Ohio Adm.Code 4123-5-21(A) does not apply to self-insuring

8

settlements under R.C. 4123.65, as amended October 20, 1993. The court explained that "[t]he statute, which was a substantial revision of its predecessor, draws a significant distinction between settlements achieved by State Fund employers and those achieved by self-insurers like Ford * * *." *Id.*, 109 Ohio App.3d at 465, 672 N.E.2d at 681. In particular, "[t]he amended version gives much more latitude to self-insured employers to negotiate settlements with their employees. No application for approval by a claimant is required." *Id.* at 466, 672 N.E.2d at 682. The court reasoned that since R.C. 4123.65 no longer requires the filing of an application for approval of settlement in self-insured claims, it could not be said that an "application filed by the claimant" was "pending" before the commission at the time of claimant's death for purposes of Ohio Adm.Code 4123-5-21(A). *Id.* at 467, 672 N.E.2d at 682-683.

{¶ 24} Thus, contrary to appellant's assertions, the court in *Orecny* did not find Ohio Adm.Code 4123-5-21(A) inapplicable to joint settlement applications filed pursuant to amended R.C. 4123.65. Instead, the court found the regulation inapplicable to settlement agreements between a claimant and a self-insured employer because the amended statute has dispensed with the requirement of filing an application for approval of settlement in self-insured claims. Implicit in the *Orecny* court's decision is the recognition that, in giving self-insured settlement agreements effective status without administrative approval, Am.Sub.H.B. No. 107 effectively changed the accrual date for self-insuring settlements from the date the commission approves the settlement agreement to the date the parties sign the agreement. However, the statute as amended still requires administrative approval, albeit by the Administrator rather than the commission, in order for a State Fund settlement to take effect. R.C. 4123.65(C).

{¶ 25} *Orecny* was decided on February 20, 1996. On November 18, 1996, Commission Policy Memo No. 0.7 was adopted, presumably as an internal regulation pursuant to R.C. 4121.32, to provide:

"Pursuant to Ohio Revised Code Section 4123.65 as effective October 20, 1993 settlements are not subject to the abatement provisions contained in Ohio Administrative Code Rule 4123-5-21 *if the settlement had reached the stage of being approved by the Administrator in state fund claims* or has been signed by both the employer and the injured worker in self-insured claims. * * * " (Emphasis added.)

{¶ 26} By necessary implication, this policy statement provides that State Fund settlements executed after October 20, 1993, *are subject* to abatement under Ohio Adm.Code 4123-5-21 if the claimant dies *before* the settlement is approved by the Administrator. Accordingly, we must also reject appellant's assertion that "Commission Policy Memo No. 0.7 * * * specifically provides that settlements pursuant to R.C. [4123.65] effective 10/20/93 and [as amended] 10/01/96 are not subject to abatement."

{¶ 27} Based on the foregoing, we conclude that the provisions of Ohio Adm.Code 4123-5-21 are generally applicable to joint settlement applications filed pursuant to R.C. 4123.65 after October 20, 1993. Specifically, we find that a joint settlement application filed pursuant to R.C. 4123.65 is an "application filed by the claimant" for purposes of Ohio Adm.Code 4123-5-21(A). An application is simply a request or claim for something and, in the final analysis, that something under both the regulation and the statute is the payment of workers' compensation benefits to an injured employee or the dependents of a deceased employee.

{¶ 28} It is true, as appellant asserts, that Ohio Adm.Code 4123-5-21(A) does not expressly provide that a claimant's death will abate action on any application filed jointly by the claimant and the employer. It is also true, as appellant reminds us, that R.C. 4123.95 requires a liberal construction of workers' compensation laws in favor of employees. But R.C. 4123.95 does not require us to feign ignorance of the procedural and historical background against which a statute is enacted or a regulation promulgated. At the time Ohio Adm.Code 4123-5-21

was promulgated, former R.C. 4123.65 required only the claimant's signature on an application for approval of settlement agreement, and thus there was no need for the regulation to provide specifically for the abatement of joint applications in order to encompass the abatement of settlements. We cannot validly assume that the phrase "filed by the claimant" was inserted into the regulation for the purpose of excluding the abatement of joint settlement applications required under a statutory revision conceived some fifteen years later.

{¶ 29} Moreover, as indicated above, the principle that unaccrued settlement payments abate upon the claimant's death has been recognized for as long as settlement agreements have been held valid and enforceable. In cases involving the application of Ohio Adm.Code 4123-5-21(A) to lump-sum settlements under former R.C. 4123.65, the claimant's right to the lump-sum payment was held unaccrued, and thus subject to abatement upon his or her death, until the commission formally approved the settlement. R.C. 4123.65(C) now provides that no State Fund settlement shall take effect until after the Administrator approves the settlement. Appellees should therefore be permitted to apply Ohio Adm.Code 4123-5-21(A) to State Fund settlements pending approval by the Administrator without having to amend the regulation itself.

{¶ 30} Accordingly, we hold that Ohio Adm.Code 4123-5-21(A) is generally applicable to joint applications for approval of a State Fund settlement filed pursuant to R.C. 4123.65, provided the claimant's death occurs before the settlement is approved by the Administrator of Workers' Compensation.

Administrative Delay

**{¶ 31}** Having held that Ohio Adm.Code 4123-5-21(A) applies to abate applications for State Fund settlements pending approval by the Administrator, we now turn to consider whether this holding should apply where the Administrator fails to process the application within a reasonable period of time. Although this precise issue has not been addressed in any of our previous decisions, we find it useful to examine those cases in which the court has given general consideration to the inheritability of workers' compensation claims and benefits.

**{¶ 32}** In our early cases, the question of whether a claimant's entitlement to workers' compensation benefits survived his or her death depended upon the type of compensation involved, the stage to which the claim had progressed, and the legal status of the person seeking to recover *post mortem*. A dependent of a deceased employee, in his or her capacity as such, was statutorily authorized to recover any unpaid disability benefits that had accrued and been awarded during the employee's lifetime. However, an injured employee's right to disability benefits was held not to pass to his or her estate, and, thus, the employee's estate representative, or the employee's dependent acting in the capacity of an estate representative, could not recover compensation to which the deceased employee was entitled while living. The stated rationale is that Ohio workers' compensation law, as expressed in both the Ohio Constitution and throughout the Act, goes only so far as to permit the State Insurance Fund to be used for the payment of compensation and benefits to living employees and their dependents after death. Moreover, it was reasoned that if accrued but unpaid disability compensation was held inheritable, it could just as well be attached by the deceased employee's creditors, which was statutorily prohibited. See *State ex rel. Petroff v. Indus. Comm.* (1933), 127 Ohio St. 65, 186 N.E. 721; *State ex rel. Rowland v. Indus. Comm.* (1932), 126 Ohio St. 23, 183 N.E. 787; *Bozzelli v. Indus. Comm.* (1930),

122 Ohio St. 201, 171 N.E. 108; *Indus. Comm. v. Terrell* (1929), 120 Ohio St. 59, 165 N.E. 536.

**{¶ 33}** Given this rationale, one would expect that parallel results would have been reached in cases involving the inheritability of a dependent's right to death benefits, since the same provisions that limit disability compensation payments to employees who are injured in the course of employment also limit death benefit payments to dependents of employees who are killed in the course of employment. Yet each of these two types of compensation was expressly distinguished from the other for purposes of inheritability. See *Bozzelli, supra*, 122 Ohio St. at 207-208, 171 N.E. at 110; *State ex rel. Hoper v. Indus. Comm.* (1934), 128 Ohio St. 105, 107-108, 190 N.E. 222, 223.

**{¶ 34}** Thus, while the dependent's estate could not recover installments of death benefits payable after the dependent's death, the personal representative of a deceased dependent could recover from the State Insurance Fund the compensation to which the dependent was entitled while living, even where no award had been made during the dependent's lifetime. See *Ballard v. Ohio Edison Co., supra; State ex rel. Hoper, supra; State ex rel. Crawford v. Indus. Comm.* (1924), 110 Ohio St. 271, 143 N.E. 574; *Whitmore v. Indus. Comm.* (1922), 105 Ohio St. 295, 136 N.E. 910; *Indus. Comm. v. Dell* (1922), 104 Ohio St. 389, 135 N.E. 669.

**{¶ 35}** As explained in *State ex rel. Hoper:*

"The foregoing would seem to be a most salutary and humane rule of law. If it were otherwise, a dependent might be denied his entire compensation by reason of an extended period of delay, beyond which he might not survive. It must at all times be remembered that one of the fundamental purposes of the Workmen's Compensation Law is prompt and certain compensation to those rightfully entitled to receive it." *Id.*, 128 Ohio St. at 108, 190 N.E. at 223-224.

**{¶ 36}** Later, the court reversed course and held that "[t]he legal representative of the estate of a workers' compensation claimant may not appeal a

decision of the Industrial Commission to a common pleas court pursuant to R.C. 4123.519." *Breidenbach v. Mayfield* (1988), 37 Ohio St.3d 138, 524 N.E.2d 502, syllabus. In that case, the widow-claimant filed an application for workers' compensation benefits on March 5, 1980, following the death of her husband. The claim was disallowed administratively at the district hearing and regional board levels. The claimant died on July 26, 1981, while her appeal was pending before the commission, and the court let stand the commission's order that "her appeal of a previously disallowed death claim abated by reason of her death." *Id.*, 37 Ohio St.3d at 139, 524 N.E.2d at 503.

**{¶ 37}** Justice Herbert R. Brown, dissenting in *Breidenbach*, argued as follows:

"*Dell, supra, Whitmore, supra*, and *Hoper, supra*, should remain the rule of this court. To deny benefits because a claimant fails to live long enough to survive delays in the administrative process is illogical and unfair. The majority's holding could encourage delay in processing claims, contrary to our statement in *Hoper, supra*, that: 'It must at all times be remembered that one of the fundamental purposes of the Workmen's Compensation Law is prompt and certain compensation to those rightfully entitled to receive it.' *Id.* [128 Ohio St.] at 108, 190 N.E. at 224.

"Further, the rule read into the statute by the majority works inequities. Claimants having identical claims could file on the same day, prosecute their claims through the system, and be awarded an entitlement to benefits on the same day. However, under the majority's decision, if one claimant died the day before entitlement was decided and the other the day after, the estate of one would receive benefits while the estate of the other would not. That result is absurd. The legislature surely did not intend that a claimant's right to recovery be contingent upon the ability to outlive the administrative process." *Id.*, 37 Ohio St.3d at 143, 524 N.E.2d at 506.

**{¶ 38}** In *State ex rel. Nossal v. Terex Div. of I.B.H., supra*, we adopted the reasoning of Justice Brown's dissent, overruled *Breidenbach*, and held:

"Where the commission awards death benefits to the surviving spouse of a deceased employee, but the spouse dies before the funds are disbursed, accrued benefits for the period between the deceased employee's death and the spouse's death shall be paid to the spouse's estate." *Id.*, 86 Ohio St.3d 175, 712 N.E.2d 747, at the syllabus.

**{¶ 39}** Finally, in *State ex rel. Liposchak v. Indus. Comm.* (2000), 90 Ohio St.3d 276, 737 N.E.2d 519, we decided that the estate of a deceased employee could recover the disability compensation that accrued but had not been paid to the employee prior to his death. In so doing, we explained:

"In *State ex rel. Nossal* * * *, we held that the estates of deceased dependents can recover R.C. 4123.60 compensation to which the dependent was entitled from the State Insurance Fund. Thus, Walter, as executor of Robert's estate, reasonably asks why estates of workers should not be able to collect accrued compensation when the estates of dependents are able to collect. We see no reason for such an inequity. Accordingly, we follow *Nossal*, and hold that Robert's estate is entitled under R.C. 4123.60 to compensation that accrued to Robert, but had not been paid to him at the time of his death." *Id.*, 90 Ohio St.3d at 282, 737 N.E.2d at 524.

**{¶ 40}** The foregoing examination reveals that this court considers the provision of prompt and certain compensation to deserving claimants as no less fundamental to Ohio workers' compensation law than the principle that workers' compensation benefits are generally uninheritable. Similarly, R.C. 4121.31(A)(3) requires the Administrator and commission to jointly adopt a rule covering the following topic: "All claims, whether of a state fund or self-insuring employer, be processed in an orderly, uniform, and timely fashion." Accordingly, Ohio

Adm.Code 4123-3-01(E) provides: "All claims shall be processed in an orderly, uniform and timely fashion."

{¶ 41} Thus, albeit slowly and unevenly, we have come to recognize the inherent injustice of requiring a claimant, whether he or she be a dependent seeking death benefits or an injured employee seeking disability compensation, to outlive delays in the administrative process. Regardless of the status of the claim at the time of death, the claimant's estate may recover the compensation that the claimant would have received, but for administrative delays, during his or her lifetime.

{¶ 42} However, since these decisions address only the abatement of death and disability claims, it remains to be determined whether administrative delay should also preclude a pending settlement claim from abating upon the claimant's death. Relying on *State ex rel. Theodore v. Ohio Bur. of Workers' Comp.* (June 28, 1996), Franklin App. No. 95APD09-1234, unreported, affirmed by entry only (1998), 82 Ohio St.3d 531, 696 N.E.2d 1079, appellees argue that "the bureau is under no statutory obligation to approve settlement applications" and "absolutely no claimant possesses a right to have a claim settled."

{¶ 43} In *State ex rel. Theodore*, the claimant filed an application to settle his claim for $276,000. The bureau responded by offering claimant $15,000, which was apparently rejected. The Administrator then disapproved the application, finding the requested amount to be excessive. The claimant sought a writ of mandamus compelling the Administrator to settle the claim for $276,000. In denying the writ, the court of appeals found that "not only has the Bureau indicated a basis for the denial of the settlement, relator can show no clear legal right to an order by this court to compel the respondent Bureau to settle the claim." *Id.*, appellate decision at 4.

{¶ 44} In the course of its opinion, the court of appeals indicated that the claimant "does have a right to expect the Bureau to consider a settlement." *Id..* at 2. However, two sentences later the court stated that "[t]he *consideration of*

*settlement* and amounts being attributed to a given claim by way of settlement are not matters that can be compelled by a writ of mandamus." (Emphasis added.) *Id*. at 3.

{¶ 45} In affirming the judgment of the court of appeals, our decision in *State ex rel. Theodore* reads, in its entirety: "The judgment of the court of appeals is affirmed consistent with the opinion of the court of appeals." *Id*., 82 Ohio St.3d at 531, 696 N.E.2d at 1079.

{¶ 46} Less than a year later, we held that the bureau does have a duty to explain its disapproval of a settlement application. *State ex rel. Ochs v. Indus. Comm.* (1999), 85 Ohio St.3d 674, 710 N.E.2d 1126. In particular, we found that a succinct statement setting forth the basis for the decision will enable a reviewing court " 'to readily discern the specific grounds relied upon and whether the record supports such a finding when a party to the proceeding initiates an action for a writ of mandamus.' " *Id*., 85 Ohio St.3d at 675-676, 710 N.E.2d at 1127, quoting *State ex rel. Mitchell v. Robbins & Myers, Inc.* (1983), 6 Ohio St.3d 481, 484, 6 OBR 531, 534, 453 N.E.2d 721, 725.

{¶ 47} In light of our decision in *State ex rel. Ochs*, it can hardly be suggested that our one-line affirmance in *State ex rel. Theodore* stands for the proposition that mandamus will not lie to compel the consideration of a settlement application. Moreover, the notion that the bureau or the Administrator has no duty to approve propitious settlements is incongruous. Not only does such a notion run contrary to those concerns over the commission's inability to effectuate settlements and thus simplify the workers' compensation system by closing files and reducing reserves that led to the 1993 amendments to R.C. 4123.65, but it is belied by the express provisions of the legislation.

{¶ 48} In addition to the amendments made to R.C. 4123.65, Am.Sub.H.B. No. 107 also enacted (see 145 Ohio Laws Part II, 2990, 3071, 3075) R.C.

4121.121(R), (now R.C 4121.121[B][18]), which sets forth the duties of the Administrator, to specifically provide that the Administrator shall:

"Pursuant to section 4123.65 of the Revised Code, approve applications for the final settlement of claims for compensation or benefits under this chapter and Chapters 4123., 4127., and 4131. of the Revised Code as the administrator determines appropriate, except in regard to the applications of self-insuring employers and their employees." (R.C. 4121.121[B][18].)

{¶ 49} While this provision does not require the Administrator to approve a settlement application on demand or accept the terms agreed to by the parties, nor does it give the Administrator the unfettered discretion to reject settlements out of hand. There is nothing in the statute to support the notion that the Administrator can properly reject an application that he determines to be appropriate. Semantics aside, the Administrator has an affirmative statutory duty to determine the propriety of settlement applications, the performance of which can be enforced by proceedings in mandamus.

{¶ 50} Thus, to the extent that *State ex rel. Theodore* has any persuasive, let alone controlling, value beyond its specific facts, it can mean no more than that this court has declined to grant the kind of relief in a settlement case that we have granted in permanent total disability cases under *State ex rel. Gay v. Mihm* (1994), 68 Ohio St.3d 315, 626 N.E.2d 666. But the present case has nothing to do with this kind of relief, and, therefore, appellees' reliance on *State ex rel. Theodore* is misplaced.

{¶ 51} *Theodore* was not an abatement case, which is evident from the fact that the claimant in *Theodore* was alive during the mandamus and appellate proceedings. Instead, the claimant was seeking a straightforward order compelling the Administrator to approve a settlement that was administratively rejected as excessive. In contrast, the Administrator in the present case did not reject the claimant's application for approval of settlement on its merits but held that it had

abated. In fact, the bureau actually approved a settlement in this case for $50,000, albeit posthumously, and appellant seeks to enforce that approval. Thus, we are not being asked to order the Administrator to approve a settlement that was rejected, or even to compel the Administrator to reconsider an application that was denied without adequate explanation. We are asked to find only that the abatement regulation is inapplicable to preclude the settlement that was approved by the Administrator from passing to the claimant's estate.

{¶ 52} We hold, therefore, that Ohio Adm.Code 4123-5-21(A) is nullified in those circumstances where the Administrator of Workers' Compensation fails to process an application for approval of a State Fund settlement pursuant to R.C. 4123.65 within a reasonable period of time.

{¶ 53} There is no serious contention by anyone in this case that it should reasonably take eight months for the Administrator or the bureau to process an application for approval of a settlement. The majority of the court of appeals found that "[s]uch a delay, in the present case, appears to have worked exactly the type of inequitable result contemplated in *Nossal*," noting the harsh results in the present case. The dissenting judge referred to this delay as the bureau's "fail[ure] to process an application for settlement in anything like a reasonable period of time." Appellees merely refer to the bureau's eight-month time lag as "slow processing" and a "perceived delay [not] conducted in bad faith," while informing us that "the bureau's main business is not the settlement of claims."

{¶ 54} In light of all of the foregoing, we find that the requested writ should have been granted, and, accordingly, the judgment of the court of appeals is reversed.

*Judgment reversed*
*and writ granted.*

DOUGLAS, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

MOYER, C.J., and COOK, J., dissent.

————————————

**COOK, J., dissenting.**

{¶ 55} I would affirm the judgment of the court of appeals for the reasons expressed in its opinion.

MOYER, C.J., concurs in the foregoing dissenting opinion.

————————————

*Koltak & Gibson, L.L.P., Ronald J. Koltak* and *Peter J. Gibson*, for appellant.

*Betty D. Montgomery,* Attorney General*,* and *Craigg E. Gould,* Assistant Attorney General, for appellees.

————————————