[This decision has been published in *Ohio Official Reports* at 96 Ohio St.3d 336.]

THE STATE EX REL. HUBBARD, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL.

[Cite as *State ex rel. Hubbard v. Indus. Comm.*, 2002-Ohio-4795.]

*Workers' compensation—Workers' compensation claim abated by Industrial Commission of Ohio when claimant dies before award is made—Mandamus sought ordering Industrial Commission to vacate its order of abatement and to reactivate relator's claim for further proceedings to determine the amount of benefits owed to the widow claimant—Writ granted, when.*

(No. 2001-0201—Submitted June 4, 2002—Decided September 25, 2002.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶1} On April 23, 1999, decedent Thomas H. Hubbard filed a workers' compensation application, asserting that he had contracted malignant mesothelioma from years of heavy exposure to asbestos in the workplace. At his September 23, 1999 hearing, he submitted medical evidence corroborating his allegation. No contrary evidence was presented.

{¶2} Despite the absence of rebuttal, a hearing officer for respondent Industrial Commission of Ohio referred decedent for a commission exam, citing commission resolution No. R96-1-01. On January 7, 2000, decedent was transported from his home to an examination in another county. He was presented for evaluation on a stretcher, unable to walk or stand. Examining physician Dr. Marc J. Dinga confirmed the diagnosis of industrial mesothelioma and sadly noted that decedent was literally "wasting away." One week later, Hubbard died.

{¶3} As a result of decedent's death, the commission ordered that all action on the application be abated. Relator, widow-claimant Mary C. Hubbard, has now commenced an original action in mandamus before this court.

{¶4} The parties agree and the evidence confirms that decedent expired from industrially induced mesothelioma. All agree that decedent timely sought workers' compensation benefits. They disagree on the widow-claimant's retention of them.

{¶5} Widow-claimant does not dispute that unaccrued benefits generally abate when a claimant dies. *State ex rel. Johnston v. Ohio Bur. of Workers' Comp.* (2001), 92 Ohio St.3d 463, 751 N.E.2d 974. She relies, however, on an exception to the rule carved by *Johnston.*

{¶6} *Johnston* involved an application for a sizeable lump sum settlement in an allowed claim that the bureau did not process for eight months. The claimant died in the interim from a nonwork-related cause, prompting the bureau to assert abatement. The widow countered with the accusation that the delay was unreasonable and proposed that an exception to the general abatement principles be made.

{¶7} We agreed. Reviewing prior cases on the inheritability of workers' compensation benefits, we concluded that "the provision of prompt and certain compensation to deserving claimants [is] no less fundamental to Ohio workers' compensation law than the principle that workers' compensation benefits are generally uninheritable." Id. at 473, 751 N.E.2d 974.

{¶8} Therefore, "albeit slowly and unevenly, we have come to recognize the inherent injustice of requiring a claimant, whether he or she be a dependent seeking death benefits or an injured employee seeking disability compensation, to outlive delays in the administrative process. Regardless of the status of the claim at the time of death, the claimant's estate may recover the compensation that the

claimant would have received, but for administrative delays, during his or her lifetime." Id.

**{¶9}** The widow-claimant in this case argues that the processing of decedent's application was unreasonably delayed by, for example, the commission's insistence on a commission/bureau medical exam. The commission relied on resolution No. R96-1-01, which provides:

**{¶10}** "Whereas pursuant to the provisions of Section 4123.68 of the Ohio Revised Code, before awarding compensation for disability or death due to silicosis, asbestosis, coal miners pneumoconiosis, or any other occupational disease of the respiratory tract resulting from injurious exposure to dust, the Administrator is to refer the claim to a qualified medical specialist for examination and recommendation with regard to diagnosis, extent of disability, or other medical questions connected with the claim."

**{¶11}** Widow-claimant argues that the resolution was inapplicable and the examination unnecessary because decedent had mesothelioma, not asbestosis. The commission declares that the latter encompasses the former under the definition set forth in R.C. 4123.68(AA):

**{¶12}** "Asbestosis means a disease caused by inhalation or ingestion of asbestos, demonstrated by x-ray examination, biopsy, autopsy, or other objective medical or clinical tests."

**{¶13}** This contention is rejected. The above specifies "*a* disease" contracted through asbestos inhalation, not "*any* disease" contracted from same. Asbestosis is "*a* disease" caused by asbestos and it should be presumed that asbestosis was the condition addressed by the definition and not mesothelioma. The two are distinct. Asbestosis is a pneumoconiosis, an "[i]nflammation commonly leading to fibrosis of the lungs." Stedman's Medical Dictionary (26th Ed.1995) 153 and 1391. Mesothelioma, on the other hand, is a cancer, "[a] rare neoplasm

derived from the lining cells of the pleura and peritoneum which grows as a thick sheet covering the viscera * * *." Id. at 1096.

{¶14} The commission, therefore, erred in effectively treating the two conditions interchangeably.

{¶15} The commission also offers this provision from R.C. 4123.68(AA):

{¶16} "All conditions, restrictions, limitations, and other provisions of this section, with reference to the payment of compensation or benefits on account of silicosis or coal miners' pneumoconiosis apply to * * * any other occupational disease of the respiratory tract resulting from injurious exposures to *dust*." (Emphasis added.)

{¶17} The commission mistakenly emphasizes the word "any" when the operative word is "dust." Decedent's mesothelioma was caused by exposure to asbestos, and asbestos is a fiber, not a dust. This provision is, therefore, inapplicable here.

{¶18} The commission additionally cites R.C. 4123.53(A), which allows the bureau to order "any employee * * * to submit to a medical examination * * * as provided by the rules of the commission or the administrator of workers' compensation." This provision does not advance the commission's cause, because the relevant "rules of the commission" have already been found inapplicable.

{¶19} Finally, the commission alleges a failure to exhaust administrative remedies, citing R.C. 4123.60, which states:

{¶20} "If the decedent would have been lawfully entitled to have applied for an award at the time of his death the administrator may, after satisfactory proof to warrant an award and payment, award and pay an amount, not exceeding the compensation which the decedent might have received, but for his death, for the period prior to the date of his death."

{¶21} This statute clearly empowers the commission to make an award to the widow-claimant. The commission asserts that because widow-claimant did not

4

specifically cite this section and apply for benefits thereunder, she has not exhausted all administrative avenues. We disagree.

{¶22} A writ of mandamus is hereby granted, ordering the commission to vacate its order of abatement and to reactivate the claim for further proceedings to determine the amount of benefits owed to the widow-claimant for the period of April 23, 1999 through January 14, 2000.

Writ granted.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____

Kelley & Ferraro, L.L.P., Thomas M. Wilson and Corey W. Frost, for relator.

Betty D. Montgomery, Attorney General, and Dennis L. Hufstader, Assistant Attorney General, for respondents.

_____